```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

BRUCE C. BEREANO              *
                              *
        v.                    *   Civil Action WMN-11-961
                              *
UNITED STATES OF AMERICA      *
                              *
*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Pending before this Court is Mr. Bereano's Petition for Writ of Error <u>Coram Nobis</u>, ECF No. 1.  The petition is fully briefed and ripe for review.  Also pending is a Motion for Hearing, ECF No. 17.  Upon consideration of the pleadings, facts and applicable law, the Court determines that (1) no hearing is necessary, Local Rule 105.6, (2) the Motion for Hearing will be denied, and (3) the Petition for Writ of Error will be denied for the reasons set forth below.

Bereano is an attorney and registered Maryland lobbyist who was convicted in 1994 on seven counts of federal mail fraud. In reviewing Bereano's criminal conviction on appeal, the Fourth Circuit summarized the history of the Government's case:

> On May 26, 1994, the Grand Jury returned an eight count indictment charging Bereano with mail fraud under 18 U.S.C. §§ 1341 and 1346.  The indictment was predicated on two theories, the knowing and willful scheme: (1) to defraud clients of money and property by submitting bills which included false statements of expenses incurred and (2) to defraud clients of their right to Bereano's honest and loyal services.  The indictment described a three-part scheme: (1) Bereano requested employees of the law firm of Bereano & Resnick and various family members to draw checks

for political contributions which were distributed to candidates through Bereano's political action committee ("PAC"); (2) the employees and family members received reimbursements through checks from Bereano's law firm often with false notations concerning the check's true purpose; and (3) the reimbursements were pro-rated among Bereano's clients' bills under the heading of "legislative entertainment."  The retainer agreements between Bereano and his lobbying clients did not include authorization to make such contributions.  The clients only agreed to pay Bereano a fixed retainer for his lobbying services and "reasonable and necessary expenses," such as photocopying, long distance phone calls, and "legislative entertainment," which Bereano defined as meals and entertainment, including sports events and concerts.

United States v. Bereano, No. 95-5312, 1998 WL 553445, *1 (4th Cir. Aug. 28, 1998); see also Def. Ex. 5.  In short, the Government alleged that Bereano defrauded his lobbying clients by falsely billing them for legislative entertainment expenses that he never actually incurred.

On November 30, 1994, after ten days of trial, this Court charged the jury and explained that to satisfy the first element of 18 U.S.C. § 1341[1], the federal mail fraud statute, the

---

[1] Section 1341 provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be

2

Government was required to prove beyond a reasonable doubt that there was "a scheme or artifice to defraud or to obtain money or property or the intangible right to honest services by means of false or fraudulent pretenses, representations or promises." See Def. Ex. 48 at 1696.  This meant that the jury could find guilt based on the existence of a scheme to defraud the lobbying clients of money or property (pecuniary fraud) or of a scheme to defraud them of the intangible right to honest services (honest services fraud).  After deliberating, the jury found Bereano guilty on all eight counts of mail fraud.[2]  The jury used a general verdict sheet that did not specify on which theory or theories of fraud it based its determination.  Bereano was ultimately sentenced, in December 1998, to a five month period of incarceration, five months of home detention, and ordered to pay a $30,000 fine.

Bereano has brought the current Petition because on June 24, 2010, the Supreme Court of the United States filed a decision in the case United States v. Skilling, -- U.S. --,--,

---

fined under this title or imprisoned not more than 5 years, or both. . .

18 U.S.C. § 1341.  Section 1346 explains that "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

[2] The Court dismissed Count 8 pursuant to Petitioner's post-trial motion for judgment of acquittal.

3

130 S. Ct. 2896 (2010), which narrowed the scope of conduct criminalized by the mail fraud statute.  In Skilling, the Supreme Court ruled that 18 U.S.C. § 1346, which proscribes fraudulent deprivations of the intangible right of honest services, is confined to only bribery and kickback schemes.  Id.

Bereano argues that the Government relied on the honest services theory of fraud when prosecuting his case, so the jury necessarily based its determination of guilt on that theory. Moreover, as conceded by both parties, there were no allegations that Bereano engaged in a bribery or kick-back scheme, so, he argues, his conviction under the honest services theory of fraud is now invalid under Skilling and its companion Black v. United States, -- U.S. --,--, 130 S. Ct. 2963 (2010).  Therefore, Bereano now petitions the Court for a writ of error coram nobis to either vacate his seven convictions and order the United States to return the fine paid plus interest, or, alternatively, to grant him a new trial based solely on pecuniary fraud.

Federal Courts have the power to grant a writ of error coram nobis to vacate a conviction after a sentence has already been served. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988) (citing United States v. Morgan, 346 U.S. 502 (1954)).  This is an extraordinary remedy, however, and should be issued "only under circumstances compelling such action to achieve justice." Morgan, 346 U.S. at 511.  Such circumstances

include the unavailability of any other remedy and that "an error of the most fundamental character" has occurred. Mandel, 862 F.2d at 1075 (internal quotations omitted).  The Fourth Circuit has found the granting of the writ warranted in cases where there was a retroactive dispositive change in the law such as that which occurred with the ruling in Skilling.  See id.

   "Constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory." Skilling, 130 S. Ct. at 2934 (citing Yates v. United States, 354 U.S. 298 (1957)). Notwithstanding, such an error does not necessarily require a reversal of the conviction.  Id.  Rather, such errors are subject to a harmless-error analysis.  Id. (citing Hedgpeth v. Pulido, 554 U.S. 941 (2008)).  If an error is found to be harmless, then the conviction may still stand.  Both Bereano and the Government agree that the instruction given to the jury was erroneous because it included an instruction on honest services fraud.  They dispute, however, whether or not it was harmless.

   The Government suggests that the harmless error test to be applied is that found in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Opp'n at 7.  Under this test, the Court should determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623.  Bereano argues that while Brecht is an

appropriate test in a habeas case, a more stringent, beyond a reasonable doubt standard, such as that found in Neder v. United States, 527 U.S. 1 (1999), is more appropriate in the present coram nobis proceeding, which is a collateral attack on a federal conviction and does not raise the same federalism concerns as a habeas case.  Reply at 2-3.  As the error here would be harmless under either standard, and as other courts reviewing Skilling-related errors have employed the Neder standard, see, e.g., United States v. Skilling, 638 F.3d 480, 482 (5th Cir. 2011); United States v. Black, 625 F.3d 386, 388 (7th Cir. 2010), this Court will use the more stringent Neder standard as well.

   The test employed in Neder to determine whether a constitutional error is harmless is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  Neder v. United States, 527 U.S. 1, 15 (1999) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).  Put another way, the Court must inquire, "is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"  Id. at 18.  To make this fact-specific determination, the Court must not become a second jury, but rather consider whether the record contains evidence that could rationally lead the jury to an acquittal based on the valid theory of guilt.  Id. at 19.  In performing

6

this analysis, the Court must remember "that jurors do not parse 'instructions for subtle shades of meaning in the same way that lawyers might.' Instead, jurors will view the instructions contextually and arrive at a 'commonsense understanding of the instructions in the light of all that has taken place at trial.'" United States v. Hairston, 46 F.3d 361, 373 (4th Cir. 1995) (quoting Boyde v. California, 494 U.S. 370, 380-81 (1990)).

The Court has undertaken a thorough review of the trial record to examine how the case was presented to the jury, particularly focusing on the Government's opening and closing arguments and the Government's examination of witnesses. Though Bereano suggests that the Government relied heavily on the honest services theory of fraud in presenting its case, the Court does not find overwhelming reliance on a singular theory or any intimation by the Government to the jury that the case is solely or primarily an honest services case. While it is true that the Government argued to the jury that Bereano was a fiduciary and violated his client's trust, it equally argued that Bereano committed pecuniary fraud by taking money that he was not authorized to take. In its closing the Government even analogized a telephone company defrauding its customers of millions of dollars by sending a million customers a bill with an additional dollar billed, to Bereano defrauding his clients

7

of several thousand dollars by adding 150 dollars, an amount no client would question, to a few clients' bills.  Def. Ex. 48 at 1627-28.  This simple analogy clearly relied on a theory of pecuniary fraud, not honest services fraud.

Bereano dedicates a fair amount of space to quoting the Court's own reasoning in ruling on motions made during the trial proceedings and the Court's analysis during the sentencing hearing.  See Pet. at 17-18, 23-26; Reply at 5-8.  In doing so, Bereano fails to recognize that to decide the present issue the Court must put itself in the shoes of the jury and consider only the evidence and arguments that were made to the jury, as these are the only things on which the jury could have based its convictions.  It is irrelevant that the Court may have thought the Government's case weak, because by convicting Bereano on all eight counts, the jury determined that the Government had presented sufficient evidence to meet its burden.[3]  The only inquiry the Court need make, then, is whether it is clear beyond a reasonable doubt that the jury would have found that same evidence sufficient to convict Bereano solely on the basis of pecuniary fraud.

---

[3] Bereano similarly included several pages of excerpts from the Government's response to the Motion to Dismiss in his reply brief.  These excerpts are irrelevant to the present decision because the jury never saw or heard anything about the Motion to Dismiss.

8

The Court finds that this burden is met.  The core of the Government's case was the fraudulent billing scheme, which is primarily about money.  Though there were also arguments that Bereano violated his clients' trust and that his fraudulent billing may have caused his clients to unknowingly run afoul of election laws by contributing in excess of the campaign contribution limits, an ordinary, rational jury could have ignored these somewhat confusing theories and used its collective common-sense to convict on the simple basis that Bereano took money from his clients without authorization for something from which they did not directly benefit.  As noted by the Fourth Circuit, "[s]ending a false bill to a third party through the mails with the necessary criminal intent is a classic violation of the mail fraud statute."  Bereano, 1998 WL 553445 at *4 (citing two cases).

Furthermore, it would be inconsistent for the jury to convict Bereano of honest services fraud but find him innocent of pecuniary fraud.  A conviction based on honest services fraud necessarily acknowledges that the jury accepts as true the scheme the Government has alleged, that Bereano knowingly took advantage of his client's trust by sending them false bills.  In accepting that this scheme took place, the jury also necessarily accepted that Bereano knowingly obtained his clients' money by

false pretenses, a finding that equates to a conviction for pecuniary fraud.[4]

In further support of his Petition, Bereano refers the Court to a number of district court cases that have granted coram nobis relief based on the Skilling decision. Reply at 20, FN 6. These cases, however, are all distinguishable because the prosecutions were solely based a theory of honest services fraud and did not allege pecuniary fraud; it was plain that the erroneous honest services fraud instruction was harmful to the petitioner. See Martignoni v. United States, No. 92 Cr. 1097, 2011 WL 4834217 (S.D.N.Y. Oct. 12, 2011); United States v. Lynch, No. 07-431-01, ECF No. 73 (E.D. Pa. Aug. 31, 2011); Stayton v. United States, 766 F. Supp. 2d 1260 (M.D. Ala. 2011);

---

[4] Bereano makes a lot of the fact that four of his clients testified at trial that they did not believe that they had been defrauded, that they were satisfied with his services and continue to work with him. He argues that, in light of their testimony and the jury instruction on honest services fraud, "the only logical conclusion is that the jury convicted Mr. Bereano based on a breach of fiduciary duty that he owed these clients." Reply at 17. This argument ignores the fact, as already noted by the Fourth Circuit, that "[t]he perception of the victim or target of the scheme is ultimately irrelevant to whether Bereano devised a scheme, or acted with the requisite intent to defraud." Bereano, 2011 WL 553445 at *4. Just because the clients did not believe they had been defrauded of money, does not mean that they had not been defrauded of money, and certainly does not mean that the jury could not find Bereano guilty of pecuniary fraud. This is especially true because the clients testified that they did not authorize and would not have knowingly paid the contributions Bereano made. Id. By not seeking authorization and by mislabeling the billing statements, Bereano was able to obtain money from his clients that he could not have otherwise legally obtained.

United States v. Panarella, No. 00-655, 2011 WL 3273599 (E.D. Pa. Aug. 1, 2011); United States v. Lopez-Lukis, No. 2:95-cf-4-FTM-29DNF, ECF No. 284 (M.D. Fla. Feb. 14, 2011); Sawyer v. United States, No. 2:02-cr-468-MCE-CMK-4, ECF NO. 706 (E.D. Cal. Feb. 1, 2011).

Bereano also attached a case in which a court granted a motion for new trial based on an erroneous honest services jury instruction.  In this case, United States v. Sprouse, no. 3:07cr211-2, 2011 WL 2414322 (W.D.N.C. June 10, 2011), the Government prosecuted a real estate closing attorney on various charges, including both pecuniary and honest services fraud.  In reviewing the motion for new trial, the court examined the record and noted that the honest services theory permeated the case: the indictment included multiple references to honest services fraud, repeated the definition of honest services in each count and included a preamble that set out the standards related to an attorney's ethical obligations and other rules that specifically govern the conduct of closing attorneys; the primary theme of the Government's opening statement was that the Defendant had engaged in undisclosed self-dealing in furtherance of her own financial interest; the Government presented an expert witness regarding the lawyer's role and ethical duties in real estate closings, a witness that would not have been relevant if the case did not involve honest services fraud; a

11

second Government witness mentioned honest services fraud "at least five times" during her testimony; the Government's closing arguments concentrated on the defendant's breach of her professional and ethical obligations; and the instructions setting out the erroneous definition of honest services fraud "permeated" the jury's charge.  Id.  The court determined that relief was appropriate because "it is highly probable that the conceded errors did in fact prejudice the jury's verdict."  Id. at *17.  Such "prejudicial spillover" existed because of how thoroughly the honest services fraud theory permeated the entire proceeding and because much of the evidence would not have been admitted if honest services fraud was absent from the case.

     Bereano's case is distinguishable because, (1) as previously discussed, the Government did not emphasize honest-services fraud over pecuniary fraud in prosecuting its case and (2) there would have been little difference in the evidence presented if the Government had been limited to presenting a case only for pecuniary fraud; the Government would have presented the same witnesses and the same documentation illustrating the operation of the scheme.  As the Seventh Circuit concluded in United States v. Black, "[t]he theory of honest-services fraud submitted to the jury was esoteric rather than inflammatory; [and] the evidence of such fraud was a subset of the evidence of pecuniary fraud."  As such, there was no

danger of "prejudicial spillover" from the erroneous instruction.

For these reasons, the Court concludes that it is clear beyond a reasonable doubt that the jury would still have found Bereano guilty if the honest services instruction had not been given.  As such, the Petition for Writ of Error <u>Coram Nobis</u> will be denied.  A separate Order will issue consistent with this Memorandum.

_____/s/_____
William M. Nickerson
Senior United States District Judge

February 28, 2012